# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| DAYS INN WORLDWIDE, INC., | Civil No. 08-6474 (JRT/LIB) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| SBSB, LLC and KENT OLIVER, | |
| Defendants. | |

Dennis R. LaFiura and Michael F. Cicero, **DAY PITNEY LLP**, One Jefferson Road, Parsippany, NJ 07054; and Jon S. Swierzewski, **LARKIN HOFFMAN DALY & LINDGREN LTD.**, 7900 Xerxes Avenue South, Suite 1500, Minneapolis, MN 55431-1194, for plaintiff.

David L. Tilden, **HANFT FRIDE PA**, 130 West Superior Street, Suite 1000, Duluth, MN 55802-2094, for defendants.

On December 27, 2001, plaintiff Days Inn Worldwide, Inc. ("DIW") and defendants SBSB, LLC and Kent Oliver (collectively, "defendants") entered into a license agreement that permitted SBSB to operate a lodging facility in Eveleth, Minnesota (the "Facility") as a Days Inn. On February 26, 2006 – prior to the expiration of the fifteen-year term of the license agreement – SBSB ceased operating the Facility as a Days Inn lodging facility. On December 23, 2008, DIW brought this action alleging that SBSB breached the license agreement. The case is before the Court on DIW's motion for summary judgment on Counts 2, 3, and 5 of its complaint and request for prejudgment interest and attorneys' fees. For the reasons set forth below, the Court grants in part and denies in part the motion.

17

## BACKGROUND

DIW "operates a guest lodging facility franchise system comprised of federally-registered trade names, service marks, logos, and derivations thereof (the 'Days Marks'), as well as the distinctive Days Inn® System." (Workman Aff. ¶ 5, Docket No. 18.) DIW does not own or operate any hotels. (*Id.*) Rather, under the terms of individual license agreements, DIW franchisees independently own and operate hotels as Days Inn guest lodging facilities using the Days Marks. (*Id.* ¶ 6.)

### I. DIW'S LICENSE AGREEMENT WITH SBSB

On December 27, 2001, DIW entered into a license agreement ("the License Agreement") with SBSB – a partnership organized under the laws of Minnesota. The License Agreement obligated SBSB to operate a lodging facility in Eveleth, Minnesota as a Days Inn for a fifteen-year period. (*Id.* ¶¶ 7-8; License Agreement § 5, Workman Aff. Ex. A, Docket No. 18.) Oliver, a principal of SBSB, provided DIW with a personal guaranty, agreeing that in the event of SBSB's default, he would "immediately make each payment and perform or cause [SBSB] to perform, each unpaid or unperformed obligation of [SBSB] under the [License] Agreement." (Workman Aff. Ex. B, Docket No. 18.)

The License Agreement required SBSB to make periodic payments to DIW including royalties as a percentage of the Facility's Gross Room Revenues, taxes, interest, reservation system user fees, and other fees (the "Recurring Fees"). (License

Agreement §§ 7, 18.5, Workman Aff. Ex. A, Docket No. 18.)  SBSB agreed to pay 1.5% interest on any past due amount accruing from the due dates.  (*Id.* § 7.3.)

Section 11.2 of the License Agreement provided that DIW could terminate the agreement with notice to SBSB if, *inter alia*, SBSB ceased operating the facility as a Days Inn.  (*Id.* § 11.2.)  In the event of DIW's termination of the License Agreement under § 11.2, SBSB was required to pay "for all damages, losses, costs and expenses (including reasonable attorney's fees) . . . and/or amounts which would otherwise be payable for and during the remainder of the unexpired Term of the License Agreement but for such termination."  (Addendum to License Agreement § 5, Workman Aff. Ex. A, Docket No. 18.)  The License Agreement also stated that if the parties entered into litigation about the terms of the License Agreement, the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce [the License] Agreement or collect amounts owed."  (License Agreement § 17.4, Workman Aff. Ex A, Docket No. 18.)

## II. DIW'S TERMINATION OF THE LICENSE AGREEMENT

In 2002, DIW suspended SBSB from using DIW's online reservations system because SBSB's Days Inn facility did not meet DIW's Quality Assurance Evaluation ("QAE") standards.  (Tessier Aff. ¶ 5, Docket No. 22.)  SBSB contends that when DIW removed SBSB from the online reservation system, potential guests were not able to make online reservations for the Eveleth Days Inn.  (*Id.*)  SBSB contends that as a consequence, it lost significant guest volume, which led to decreased profitability.  (*Id.*)

DIW asserts that as of April 2005, SBSB was in default on its financial obligations to make payments for the Recurring Fees. (Workman Aff. ¶¶ 28-39, Docket No. 18.)

In a letter dated October 13, 2005, SBSB informed DIW that it intended "to drop the Days Inn Franchise on [the Facility] upon completion of the original contract." (Workman Aff. Ex. G, Docket No. 18.) SBSB stated that it was "already making arrangements to pull down the entrance sign and change all signage at the property." (*Id.*) On December 20, 2005, SBSB further advised DIW by letter that the ownership group for the Eveleth Days Inn "ha[d] been actively listing the property for sale since December of 2004. . . . The ownership and management group made the decision to close the property, permanently, on March 1, 2006, if a buyer has not been found prior to this date." (*Id.* Ex. I.) On March 7, 2006, SBSB advised DIW by letter that "[a]s of February 26, 2006, [SBSB had] completely closed all operations at the property. [SBSB was] still actively listing the property for sale, but [had] no offers . . . . The property [was] locked up and an outside agency [was] providing security[.]" (*Id.* Ex. K.)

On March 30, 2006, DIW acknowledged SBSB's premature termination of the License Agreement, effective February 26, 2006. DIW notified SBSB that it was required to pay "Damages of $1,066,082.56. . . . [and] any outstanding Recurring Fees and any other fees and charges through the date [SBSB] complete[d] the de-identification of the Facility." (*Id.* Ex. L.) SBSB "estimate[d] that, as of March 28, 2006, SBSB owe[d] [DIW] $120,437.57 in such fees and charges." (*Id.*)

## III. DIW'S ACTION AGAINST SBSB

DIW brought this action against defendants (1) seeking an accounting of the gross revenue received by SBSB while operating as a Days Inn; (2) alleging breach of the License Agreement and seeking $926,982.95 in "actual damages" for SBSB's premature termination of the License Agreement; (3) alleging breach of the License Agreement and seeking judgment in the amount of $104,641.76 for outstanding Recurring Fees; (4) alleging unjust enrichment based on SBSB's failure to remit payment for Recurring Fees; and (5) seeking judgment against Oliver under the personal guaranty for actual damages and the past-due Recurring Fees. In addition, DIW seeks prejudgment interest, attorneys' fees, and costs. (*Id.*)

On November 30, 2009, DIW filed this motion for summary judgment on Counts 2, 3, and 5.[1] (Mot. for Summ. J., Docket No. 15.)

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A

---

[1] DIW represented to the Court that it would voluntarily dismiss Counts 1 and 4 if the Court grants the motion for summary judgment in its entirety. (Mem. in Supp. of Mot. for Summ. J. at 6 n.1, Docket No. 17.)

court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. BREACH OF THE LICENSE AGREEMENT (Counts 2 and 5)

DIW claims that SBSB breached the License Agreement by failing to operate the Eveleth facility as a Days Inn for a period of fifteen years and by failing to remit payment for Recurring Fees due from April 2005 to March 2006. The parties do not dispute that Minnesota law applies to DIW's breach of contract claims and requests for damages.[2]

---

[2] The License Agreement provides: "[t]his Agreement will be governed by and construed under the laws of the State of New Jersey, except for its conflicts of law principles. The New Jersey Franchise Practices Act will not apply to any Facility located outside the State of New Jersey." (Workman Aff. Ex. A, § 17.6.1, Docket No. 18.) The Minnesota Franchise Act ("MFA"), however, voids choice of law provisions in franchise agreements in which a Minnesota partnership is a party:

> Any condition, stipulation or provision, **including any choice of law provision**, purporting to bind any person who, at the time of acquiring a franchise is a resident of this state, or, **in the case of a partnership or corporation, organized or incorporated under the laws of this state**, or purporting to bind a person acquiring any franchise to be operated in this state to waive compliance or which has the effect of waiving compliance with any provision of sections 80C.01 to 80C.22 or any rule or order thereunder **is void**.

Minn. Stat. § 80C.21 (emphasis added); *Banbury v. Omnitrition, Int'l, Inc.*, 533 N.W.2d 876, 879-80 (Minn. Ct. App. 1995); *see also Healy v. Carlson Travel Network, Assocs., Inc.*, 227 F. Supp. 2d 1080, 1086 (D. Minn. 2002) ("Since the 1989 amendment, Section 80C.21, the MFA non-waiver provision, has been held to override contractual choice of law."). Because SBSB is a Minnesota partnership, the MFA voids the choice of law provision in the License Agreement.

### A. Failure to Operate the Eveleth Lodging Facility as a Days Inn for Fifteen Years

#### 1. SBSB's Liability for Breach

DIW argues that there is no fact dispute that SBSB breached the terms of the License Agreement by failing to operate the Eveleth facility as a Days Inn for a fifteen-year period. SBSB argued at the motion hearing that there is a fact dispute about whether DIW acted in good faith in removing SBSB from the Days Inn online reservations system and whether DIW performed under the terms of the License Agreement. SBSB cites an affidavit by Scott Tessier, the Vice President of Asset Management for Oliver's company, in which Tessier states:

> Despite substantial performance with the franchise agreement as well as good faith efforts to continue to make improvements to the Facility, [DIW] removed [SBSB] from their online reservation system in 2002 for allegedly failing to meet Quality Assurance Evaluation ("QAE") standards. Although [SBSB] attempted to negotiate with [DIW] to be reinstated in the reservation system in conjunction with their on-going good faith efforts to update the Facility, [DIW] refused. Thereafter, the majority of the time period the Facility remained in operation as a Days Inn franchise, when potential customers attempted to make reservations online, the online reservations system indicated that there were no rooms available. As a result, the Facility lost significant guest volume, which in turn led to its decreased profitability.

(Tessier Aff. ¶ 5, Docket No. 22.)

Tessier's affidavit does not describe any specific facts supporting SBSB's contention that DIW did not act in good faith, does not contend that DIW had an obligation to negotiate with SBSB despite SBSB's inability to meet QAE standards, and does not identify any provision in the License Agreement that DIW breached. SBSB also has not offered a legal basis for its argument. *Industrial Rubber Applicators, Inc. v.*

*Eaton Metal Prods., Co.*, 171 N.W.2d 728, 730-31 (Minn. 1969); *see also APS v. US Bank*, Civ. No. 08-5068, 2009 WL 4723311, at *3 (D. Minn. Dec. 2, 2009) (discussing elements to establish breach of contract in Minnesota). Viewing the facts in a light most favorable to SBSB, Tessier's affidavit, alone, would not permit a reasonable trier of fact to conclude that DIW did not act in good faith or that DIW failed to perform under the terms of the License Agreement. Accordingly, the Court grants DIW's motion for summary judgment on SBSB's liability for failure to operate the Eveleth facility as a Days Inn.

### 2. Damages

DIW seeks "actual damages" for "SBSB's breach of its obligation to operate the [Eveleth] Facility as a Days Inn guest lodging facility for the remaining term of the License Agreement." (Compl. ¶ 31, Docket No. 1.) DIW concludes it has suffered actual damages of $926,982.95 when reduced to present value. (Mem. in Supp. of Mot. for Summ. J. at 8, 11, Docket No. 17.) DIW calculates those damages as follows:

> In 2005, the Gross Room Revenue earned at the Facility was $1,046,830. DIW divided this amount by 365 days (the number of days that the Facility was operated as a Days Inn during 2005) to determine the average daily Gross Room Revenues earned at the Facility during 2005 ($2,868.02). The License Agreement terminated on February 26, 2006, 4,334 days prior to the expiration of its fifteen-year term (January 9, 2017). But for the premature termination due to SBSB's financial default, and based on the actual 2005 Gross Room Revenue reported by SBSB during its operation of the Facility as a Days Inn, DIW would have earned $1,093,839.90 in Recurring Fees during the remainder of the fifteen-year term of the License Agreement. Reduced to present value, DIW's actual damages are $926,982.95.

(Mem. in Supp. of Mot. for Summ. J. at 10-11, Docket No. 17 (citations omitted); Workman Aff. ¶ 54, Docket No. 18 (stating that DIW based its damages calculation on 2005 gross room revenues to provide an accurate estimate of SBSB's revenue forecast for the remainder of the fifteen-year term).)

SBSB argues that DIW may not recover what DIW defines as actual damages, because DIW is effectively seeking to recover "liquidated damages," and the MFA bars parties from recovering liquidated damages. SBSB argues in the alternative that there is a material fact dispute about the calculation of any actual damages.

Section 12 of the License Agreement, entitled "Liquidated Damages," states that within thirty days of the termination of the License Agreement SBSB must pay the DIW "as Liquidated Damages, an amount equal to the sum of accrued Royalties and Basic Reservation Charges during the . . . number of months remaining in the unexpired Term." (License Agreement, § 12.1 Workman Aff. Ex. A, Docket No. 18.) Section 5 of the Addendum to the License Agreement states that "[l]iquidated damages and termination penalties are prohibited by law in the state of Minnesota and, therefore, Section 12 of the License Agreement is amended by deletion of all references to liquidated damages and termination penalties." (Addendum to License Agreement § 5, Workman Aff. Ex. A, Docket No. 18.) The Addendum further provides that

> [a]t the time of such termination of the License Agreement, you covenant to pay us within 10 days after demand [for] compensation for all damages, losses, costs and expenses (including reasonable attorney[s'] fees) incurred by us and/or amounts which would otherwise be payable for and during the remainder of the unexpired Term of the License Agreement but for such termination.

(*Id.*)

The parties do not dispute that DIW may not recover liquidated damages for SBSB's breach of the License Agreement. Under rules promulgated pursuant to the MFA,

> All franchise contracts or agreements or any other device or practice of a franchisor, shall conform to the following provisions. It shall be unfair and inequitable for any person to . . . . [r]equire a franchisee to waive his rights to a trial or **consent to liquidated damages**, termination penalties, or judgment notes . . . .

MFA R. 2860.4400(J) (emphasis added). The Minnesota Supreme Court has explained that "[t]he term 'liquidated damages' signifies the damages the amount of which the parties to a contract stipulate and agree, when the contract is entered into, shall be paid in case of breach." *Schutt Realty Co. v. Mullowney*, 10 N.W.2d 273, 276 (1943) (internal quotation marks omitted).

SBSB contends that DIW's calculated amount of actual damages "constitutes a stipulated amount of damages to be paid in the case of a breach of the [License] Agreement." (Mem. in Opp'n to Mot. for Summ. J. at 9, Docket No. 21.) SBSB notes that the formula that DIW uses to calculate "actual damages" is derived from the formula in the "Liquidated Damages" section of the License Agreement. (*Id.*)

The MFA prohibits DIW from seeking liquidated damages under the License Agreement, but "there is no provision of Minnesota law or the contract between the parties which prevents [DIW] from seeking other contractual damages, such as damages for lost profits." *See Holiday Hosp. Franchising, Inc. v. H-5, Inc.*, 165 F. Supp. 2d 937, 940 (D. Minn. 2001). The Addendum to the License Agreement eliminated the provision in referring to liquidated damages, and DIW seeks only damages for lost profits from

projected Recurring Fees payments over the remainder of the fifteen-year term of the License Agreement. At trial, DIW may attempt to prove any damages it incurred as a result of SBSB's breach. *See id.* at 940-41.

Although the Court concludes that DIW may recover actual damages, there is a fact dispute about the amount of damages DIW is entitled to recover. DIW's calculation fails to account for declining revenues at the Eveleth Days Inn and for how the declining revenues would ultimately impact DIW's own profits. To support its actual damages calculations, DIW cites *Travelodge Hotels, Inc. v. SD Hospitality, Inc.*, Civ. No. 06-cv-1736, 2007 WL 1892237 (D. Minn. June 25, 2007), where the district court approved a similar calculation of damages arising out of a premature termination of a franchise agreement. The Court disagrees that *Travelodge* is instructive.

In *Travelodge*, the defendant did not file a brief in opposition to the motion for summary judgment; thus the plaintiff provided the only information from which the Court could determine damages. *Id.* at *4. By contrast, SBSB has adduced evidence that declining revenues at the facility and costs that DIW saved by not servicing the Eveleth Days Inn would reduce the amount of actual damages to which DIW is entitled. *See Holiday*, 165 F. Supp. 2d at 940-41 ("Indeed, [the plaintiff] contends that the calculation they have performed . . . represents a reasonable estimate of lost future profits. [The defendant] argues that the . . . calculation fails to take into consideration certain relevant factors – such as the declining revenues of the Eveleth hotel and the costs [the plaintiff] avoided because it no longer had to provide franchise services to the defendant – in arriving at a projection for future damages. These arguments, however, merely raise

questions of fact (albeit serious ones) which are more appropriate for cross-examination at trial."). Thus, the appropriate actual damages calculation is a question for the jury.

In sum, DIW may recover actual damages as a consequence of SBSB's breach of the License Agreement – *e.g.*, lost profits – but there is a fact dispute as to the proper calculation of those damages. Accordingly, the Court grants DIW's motion for summary judgment on SBSB's liability under Count 2 – and Count 5 to the extent the personal guaranty claim is related to Count 2. The Court denies DIW's motion for summary judgment on damages arising out of SBSB's failure to operate the Facility as a Days Inn for the entirety of the License Agreement period.

**B.     Failure to Remit Payment for Recurring Fees** (Counts 3 and 5)

DIW also alleges that SBSB breached the License Agreement by failing to remit payment for Recurring Fees from April 2005 to March 2006, when DIW terminated the License Agreement. DIW brings adduced evidence showing that SBSB stopped paying Recurring Fees to DIW during that period and that DIW is entitled to $104,641.76 under Counts 3 and 5 of the complaint. (*See* Workman Aff. Exs. C, E, H, L, N, Docket No. 18.)

SBSB concedes that it was required to pay Recurring Fees to DIW during the term of the License Agreement. (Mem. in Opp'n to Mot. for Summ. J. at 7, Docket No. 21.) However, SBSB claims that it has made all payments for Recurring Fees. SBSB cites the Tessier affidavit, which asserts that "[SBSB] tendered to [DIW] all monthly recurring payments as well as additional payments based upon sales and revenue. At present, [SBSB] have not been able to locate all records relating to the recurring fees paid to [DIW]." (Tessier Aff. ¶ 4, Docket No. 22.) In the Court's view, Tessier's self-serving,

unsupported affidavit does not create a genuine fact dispute that SBSB remitted payment for Recurring Fees for the period between April 2005 and March 2006. *See Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831 (8th Cir. 2008) ("A properly supported motion for summary judgment is not defeated by self-serving affidavits." (internal quotation marks and citation omitted)); *see also Anda v. Wickes Furniture Co., Inc.*, 517 F.3d 526, 531 (8th Cir. 2008) ("In order to establish the existence of a genuine issue of material fact, . . . the plaintiff must substantiate [her] allegations with sufficient probative evidence that would permit a finding in [her] favor." (citation and internal quotation marks omitted; alterations in original)). Accordingly, the Court grants DIW's motion for summary judgment on Count 3 for SBSB's failure to pay Recurring Fees and on Count 5 to the extent that Count relates to Count 3.

### C. Prejudgment Interest and Attorneys' Fees

SBSB does not challenge DIW's request for prejudgment interest, attorneys' fees, and costs of litigation. Under Minnesota law, "attorney fees are not recoverable in litigation unless there is a specific contract permitting or a statute authorizing such recovery." *Barr/Nelson, Inc. v. Tonto's, Inc.*, 336 N.W.2d 46, 53 (Minn. 1983). DIW may recover attorneys' fees under Section 17.4 of the License Agreement, which provides that "[t]he non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce [the License Agreement] or collect amounts owed under [the License Agreement]." (License Agreement § 17.4, Workman Aff. Ex. A, Docket No. 18.) DIW may also recover prejudgment interest on a final award of damages in accordance with Minnesota law. *See*

Minn. Stat. § 549.09 subd. 1 ("When a judgment or award is for the recovery of money, including a judgment for the recovery of taxes, interest from the time of the verdict, award, or report until judgment is finally entered shall be . . . added to the judgment or award.") Accordingly, DIW is entitled to recover attorneys' fees and prejudgment interest on a final judgment.

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that plaintiff Days Inn Worldwide, Inc.'s Motion for Summary Judgment [Docket No. 15] is **GRANTED in part** and **DENIED in part** as follows:

1. The motion is **GRANTED** as to defendants' liability as alleged in Count 2 and Count 5 (to the extent Count 5 relates to Count 2). The motion is **DENIED** as to the calculation of "actual damages" for breach of the License Agreement as alleged in Count 2.

2. The motion is **GRANTED** as to Count 3 and Count 5 (to the extent that Count 5 relates to Count 3).

DATED: September 7, 2010  
at Minneapolis, Minnesota.

\_\_\_\_s/ John R. Tunheim\_\_\_\_\_  
JOHN R. TUNHEIM  
United States District Judge